IN THE U.S. DISTRICT COURT
FOR THE EASTERN DISTRICT, TENNESSEE
AT GREENVILLE

| | |
|---|---|
| LANCE AND CHRISTIANA TORBETT )<br>As biological parents and next friends of )<br>minor Plaintiff L.T., )<br>)<br>    Plaintiffs, )<br>)<br>v. )<br>)<br>PROVIDENCE ACADEMY, )<br>)<br>    Defendant. ) | Case No.: 2:25-cv-00033<br><br>JURY DEMANDED |

**REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

Comes now, Defendant, Providence Academy ("Defendant"), by and through counsel, and for its Reply to the Response of Plaintiff to Defendant's Motion to Dismiss, states that Plaintiffs' proposed Amended Complaint is futile and fails on its face. For support of this Reply, Defendant states as follows:

    **I.    RULE 12 STANDARD AND FUTILITY OF MOTION TO AMEND**

Under Federal Rule of Civil Procedure 15(a)(2), leave to amend must be freely given when justice so requires. This analysis requires the Court to consider undue delay in filing, lack of notice to the opposing party, bad faith by the movant, failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and the futility of the amendment. *Downing v. Botezat*, 2024 U.S. Dist. LEXIS 150485, 15-16 (E.D. TN 2024) (citing *Brumbalough v. Camelot Care Ctrs., Inc.*, 427 F.3d 996, 1001 (6th Cir. 2005)). The only factor in dispute here is the futility of the proposed amendment. The futility factor mirrors the standard for a Rule 12(b)(6) motion to dismiss: "Amendment to a complaint is futile when the proposed amendment would not permit the

complaint to survive a motion to dismiss." *Miller v. Calhoun Cnty.*, 408 F. 3d 803, 817 (6th Cir. 2005).

II.     LAW & ARGUMENT

A. **Breach of Contract Claim Fails pursuant to the Student Handbook**

To articulate a claim for relief for breach of contract, the claimant must allege an enforceable contract, nonperformance amounting to a breach, and damages. *Rice v. Belmont Univ.*, 2020 Tenn. App. LEXIS 253, *4-5 (citing *ARC LifeMed, Inc. v. AMC-Tennessee, Inc.*, 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005)). In the case at issue, Plaintiffs cannot show nonperformance pursuant to the terms of the Student Handbook.

As part of Plaintiffs' Response, Plaintiffs have attached the applicable procedures contained in the Student Handbook for the 2023-2024 academic year. [See Doc. 26]. The Plaintiffs have also indicated that Providence breached a contract with the Plaintiffs by failing to follow the policies and procedures within its Student Handbook. However, that couldn't be further from the truth. The Student Handbook in question clearly states the procedures for disciplining a student within Providence Academy. It also states the Purpose and Use of the Student Handbook:

> **Purposes and Use of the Parent/Student Handbook**
>
> The purpose of the Parent/Student Handbook is to provide to all parents, students, members of the faculty and staff, and those inquiring about Providence Academy a concise presentation of the mission, philosophy, policies, and practices of Providence Academy. The Handbook provides students and their parents a set of guidelines for citizenship and behavior in and around Providence Academy. We recognize that the handbook is imperfect and silent on some issues which may arise. In cases of disagreement about a particular interpretation, the Administration and the Board of Directors of Providence Academy will render decisions that they deem fair to both the students and the school.

Student Handbook, Page 2. The Student Handbook spells out that Providence not only had the ability but also the necessity to take the actions it did in response to the allegations and charges against the minor Plaintiff. First, as stated in its Motion to Dismiss, Tennessee state law requires

employees of Providence Academy to report abuse of a child if they have "knowledge or reasonable cause to suspect that a child who attends the school may be a victim of child abuse or child sexual abuse." Tenn. Code Ann. § 49-6-1601. That obligation includes a requirement that school officials "report the information to the department of children's services and law enforcement." Tenn. Code Ann. § 49-6-1601(d)(1)(A)-(B).  Following this state law, Page 28 of the Student Handbook also indicates Providence Academy's requirements for child abuse reporting.

The conduct and discipline portion of the Student Handbook outlines clearly the rights of the school in disciplinary procedures. First, on Page 75, the handbook states:

> A behavior, either on or off campus, including text messages sent after school hours, that indicates a student has little desire to live a life honoring to God, or any conduct that gives evidence of disregard for the spirit of the school standards, is sufficient cause for disciplinary action, including disenrollment, suspension, or expulsion.

Student Handbook, Page 75. Moreover, the Student Handbook states:

> The school generally follows the discipline procedures contained in this Handbook. However, there are circumstances in which the school administration may determine that it is appropriate not to follow discipline steps. In cases in which a student has engaged in egregious, immoral, or other unacceptable behavior, the school reserves the right to disenrollment, suspension, or expulsion of the student immediately.

*Id.* Further, in the Expulsion Section of the Student Handbook, the following are listed as examples of inappropriate conduct that are considered to be grounds for suspension or expulsion:

- Abuse of other student and their rights;
- Sexual Promiscuity;
- Activities that threaten the safety of the student or students;
- Any form of physical assault;
- Activities that violate biblical moral codes of conduct;
- A breach of conduct off campus that has an adverse effect on the testimony of the school in the community.

*Id*. at 78-79. Finally, the Student Handbook clearly defines what is constituted as Serious misconduct/infractions on Page 79, providing grounds for immediate expulsion from Providence Academy.

**Serious misconduct/infractions:** The following violations are considered conditions for immediate expulsion.

- Acts endangering the lives of other students or staff members
- Gross violence/vandalism to the school facilities
- Any violation of U.S., TN, or local laws (this includes carrying a weapon of any kind)
- Any act in clear contradiction of scriptural commands
- Use and/or possession of drugs of any kind, on or off campus

*It should be noted that the serious misconduct does not have to take place at Providence Academy or during school hours or school events for Providence Academy to take disciplinary action.

*Id*. at 79.

Undoubtedly, in this case, Plaintiffs' Complaint and proposed Amended Complaint fail under any breach of contract theory pursuant to the Student Handbook attached to Plaintiffs' proposed Amended Complaint. After the complaining minor and Providence Academy reported the alleged assault of a minor child to the authorities, as was required of Providence Academy under Tenn. Code Ann. § 49-6-1601, the minor Plaintiff was charged, and ultimately pleaded guilty and was convicted. Complaint ¶¶ 5-6; Proposed Amended Complaint ¶¶ 6-7. This clearly falls under the Serious misconduct/infractions section of the Student Handbook allowing for immediate expulsion, as it was a violation of a Tennessee State law for which the minor Plaintiff eventually pleaded guilty. As such, Plaintiffs' statement that the Motion to Amend and Amended Complaint alleviates the need to dispose of the matter dispositively is simply not true. The attempt to amend the Complaint is futile as the breach of contract claim fails as a matter of law under the plain language of the Student Handbook and allegations contained in both the Complaint and the proposed Amended Complaint. As such, Providence Academy moves that this court dispose of

Plaintiffs' claims for Breach of Contract and Deny Plaintiff's request to Amend Plaintiffs' Complaint.

**B. Plaintiffs' Title IX Claim Fails because receipt of Paycheck Protection Program loans funds through the Small Business Administration do not constitute receipt of federal funds for the purposes of Title IX.**

In opposition to Providence Academy's pending Motion to Dismiss, Plaintiffs have alleged that "Defendant received PPP funds during COVID." Plaintiffs' Response p. 1 [See Doc. 26.] Specifically, in their proposed Amended Complaint Plaintiffs seek to allege that "Defendant accepted monies and other benefits through the Paycheck Protection Program ("PPP") administered by the Small Business Administration and/or other agencies of the federal Government." [See Doc. 25-1.]

This issue has been the subject of litigation in multiple federal courts since the implementation of PPP loans in 2020 in the early days of the COVID-19 pandemic. Most recently, on June 17, 2025, the U.S. District Court for the District of Nevada assessed all current case law on the interplay of Title IX and PPP loans, and its analysis is instructive. In *Gardner v. Sage Ridge School*, parents of a minor child brought suit against the defendant school asserting various causes of action, including violations of Title IX of the Education Amendments of 1972. The Court in *Gardner* evaluated those claims, and in particular, noted findings from the Middle District of Tennessee and the Third Circuit Court of Appeals in its analysis.

> . . . Sage Ridge received money from the federal government in 2020 through a PPP loan that was forgiven in its entirety. (*Id*. at 5.) However, PPP loans were not "ordinary." See *Radix L. PLC v. Silicon Valley Bank*, 507 F. Supp. 3d 1141, 1143 (D. Ariz. 2020). Given the nature of the COVID-19 Pandemic and the urgency behind the PPP loans, it is likely that little thought was given as to whether such loans counted as "receiving federal financial assistance." Nevertheless, the Court endeavors to determine whether such loans permit application of Titles VI and IX.
>
> PPP loans were enacted by Congress by the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") during the unprecedent COVID-19 Pandemic. *See* 15

U.S.C. § 636(a)(36). The CARES Act and the PPP loans programs were enacted as "assistance and [a] health care response for individuals, families, and businesses affected by the coronavirus pandemic." Business Loan Program Temporary Changes; Paycheck Protection Program, 85 Fed. Reg. 20811 (Apr. 15, 2020) (to be codified at 13 C.F.R. pt. 120). PPP loans were enacted to assist small businesses to continue operations and "keep[] workers paid and employed across the United States" during the COVID-19 crisis. *Id.* Unlike typical SBA loan programs, a PPP loan could be made to "any [small] business," non-profit organization, [*19] and other organization or business concern that qualifies as small under industry-specific rules. 15 U.S.C. § 636(a)(36)(D)(i). The SBA's guidance regarding the PPP loans notes that while the loans were eligible "for forgiveness of up to the full principal amount," the nature of the program was "temporary." 85 Fed. Reg. 20811. The loans were based on eight weeks of payroll and business costs. *Id.* Loans issued before June 5, 2020 had a maturity date of two years. *Id.* at 20813. But nowhere in the statutes or federal regulations regarding the PPP loans are there any references or clear conditions to abide by Titles VI or IX. *See* 15 U.S.C. § 636; 85 Fed. Reg. 20811.

Looking to other forms of federal emergency relief, regulations from the Federal Emergency Management Agency ("FEMA") specifically "effectuate the provisions of Title VI of the Civil Rights Act of 1964," 44 C.F.R. § 7.1, and "Title IX of the Education Amendments of 1972," 44 C.F.R. § 19.100. To receive FEMA funding, FEMA requires applicants to submit "assurances . . . that each education program or activity operated by the applicant or recipient and to which these Title IX regulations apply will be operated in compliance with these Title IX regulations." 44 C.F.R. § 19.115(a). Unlike FEMA disaster relief, SBA guidance does not call out to Title VI or IX. *See* 85 Fed. Reg. 20811. Thus, the Court will not read in requirements for recipients of PPP loans, absent other forms of federal funding, to comply with Title VI or IX.

Additionally, per Titles VI and IX, Sage Ridge must be *receiving* federal assistance. As the Middle District of Tennessee aptly noted: "use of the word 'receiving'—the present participle of 'receive'—makes it unequivocally clear that the program or activity at issue must be receiving, or 'com[ing] into possession of,' such assistance." *Welch v. United Network for Organ Sharing*, 767 F. Supp. 3d 746, 778 (M.D. Tenn. 2025), *adhered to on reconsideration*, No. 3:24-CV-00422, 2025 U.S. Dist. LEXIS 46909, 2025 WL 824137 (M.D. Tenn. Mar. 14, 2025) (citing Receive, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/receive (last visited February 14, 2025)). As another Court found, an entity's receipt of a PPP loan constituted "'federal financial assistance' and had to comply with Title IX for the *life* of its loan." *Karanik v. Cape Fear Acad., Inc.*, 608 F. Supp. 3d 268, 284 (E.D.N.C. 2022) (emphasis added). Sage Ridge received the loan in April 2020 for expenses covering the school the following eight weeks. The Paycheck Protection Program ended on May 31, 2021. The PPP loan that Sage Ridge received matured in April of 2022 and was forgiven in its entirety. (ECF No. 26 at 5.) Sage Ridge and Gardner did not sign their employment contract

until April 17, 2023 and Doe did not enroll at Sage Ridge until later in 2023. *Id.* at 7-8.)

The Court finds that permitting application of Titles VI and IX under the circumstances of this case would permit application of the statutes indefinitely and in situations where agreements between the federal government and entities have concluded. The Court acknowledges the unprecedent circumstances of the COVID-19 Pandemic and the needs of thousands, if not millions, of businesses. But <u>absent clear Congressional intent or federal regulatory authority, the Court will not read in Title VI or IX requirements many years past the issuance of the limited and emergency PPP loan that Sage Ridge received in 2020.</u> *See Pennhurst State Sch. & Hosp.*, 451 U.S. at 17 ("[I]f Congress intends to impose a condition on the grant of federal moneys, it must do so unambiguously.").

*Gardner v. Sage Ridge Sch.*, No. 3:24-CV-00403-CLB, 2025 U.S. Dist. LEXIS 114896, at *18-21 (D. Nev. June 17, 2025) (emphasis added) (copy attached). The *Gardener* court went on to hold that the plaintiffs in that case had not sufficiently alleged that the defendant school in that case receives federal financial assistance such that it would be subject to Title IX, and found that the plaintiffs in that case had failed to state a claim under Title IX against the defendant school. *Id.* at 21. The *Gardner* court further held that amendment under Fed. R. Civ. P. 15 would be futile "because no set of facts can be added to Plaintiffs' … Title IX claims that would constitute a valid and sufficient claim." *Id*.

In the case at bar, Plaintiffs' allegations are the at Defendant "received"—in the past—PPP loans and/or forgiveness. Plaintiffs do not allege that Defendant is currently receiving PPP loans through the Small Business Administration or any other federal entity, nor do they allege that Defendant was receiving such loans in 2024 when the assault of the complaining minor child occurred. Indeed, Defendant could not have received any PPP loans in 2024, as such loans were discontinued no later than May 31, 2021. *Id*. at 20. And unlike cases such as *Karanik v. Cape Fear Academy*, 608 F. Sup. 3d 268 (E.D.N.C. 2022), the events in this case did not take place during the 2020-2021 academic year, when a school such as Defendant Providence Academy might be alleged

to be "receiving" PPP loans. As the Middle District of Tennessee has observed, the only way for the Plaintiffs' argument on the PPP loan to have merit would require this Court to "read 'receiving' as 'received.'" *Welch v. United Network for Organ Sharing*, 767 F. Supp. 3d 746, 778 (M.D. Tenn. 2025). The Court should follow the recent example of the District Court for Nevada, as well as its neighbors in the Eastern District of North Carolina and the Middle District of Tennessee, and find that past receipt of PPP loans does not constitute "receiving" federal funds for the purposes of claims under Title IX, and that amendment to assert such claims should not be permitted on grounds of futility.

## CONCLUSION

Plaintiffs have already conceded that their claims for negligence, malicious prosecution, false imprisonment, and outrageous conduct fail as a matter of law, and only attempt to preserve their claims of breach of contract and Title IX. However, by Plaintiffs' own allegations, the minor Plaintiff was accused by a complaining minor child of sexual harassment and assault at a social event unrelated to Defendant that took place on February 11, 2024. The allegations were reported to legal authorities by the complaining minor and Defendant Providence Academy as required by law. Defendant expelled the minor Plaintiff pursuant to its rights and stated intentions in the Student Handbook, and the minor Plaintiff plead guilty to a lesser charge. Plaintiffs have pointed to past receipt of PPP loans, but have not identified any federal funds that Defendant was "receiving" in 2024 that would subject it to claims under Title IX. In all respects, Defendant acted in full compliance of the law and consistent with its Student Handbook, and all claims against it should be dismissed with prejudice.

Respectfully submitted:

LEWIS THOMASON, P.C.

*/s/ Peter Robison*
Peter C. Robison, BPR #27498
424 Church Street, Suite 2500
P.O. Box 198615
Nashville, TN 37219
Phone: 615-259-1343
probison@lewisthomason.com

*/s/ Mikel A. Towe*
Mikel A. Towe, BPR #32404
900 South Gay Street, Suite 300
P.O. Box 2425
Knoxville, TN 37902
Phone: 865-546-4646
mtowe@lewisthomason.com

*Counsel for Defendant Providence Academy*

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of June, 2025, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

> Arthur Knight, III
> LAW OFFICE OF ARTHUR KNIGHT, III
> 3248 Tazewell Pike, Ste 103
> Knoxville, TN 37918
> arthur@arthurfknightlaw.com

*Counsel for Plaintiffs*

*/s/ Peter Robison*
Peter C. Robison