# IN THE U.S. DISTRICT COURT
## FOR THE EASTERN DISTRICT, TENNESSEE
### AT GREENVILLE

| | | |
|---|---|---|
| **LANCE AND CHRISTIANA TORBETT** | ) | |
| **As biological parents and next friends of** | ) | |
| **minor Plaintiff L.T.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **Case No.: 2:25-cv-00033** |
| **v.** | ) | |
| | ) | **JURY DEMANDED** |
| **PROVIDENCE ACADEMY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S SECOND MOTION FOR SUMMARY JUDGMENT

Providence Academy ("Defendant" or "Providence Academy"), by and through counsel, hereby files this Memorandum of Law in Support of its Second Motion for Summary Judgment as to all claims contained in the Second Amended Complaint filed by Plaintiffs Lance and Christiana Torbett as biological parents and next friends of minor Plaintiff L.T. (the "minor Plaintiff") (collectively "Plaintiffs").

## FACTS

Defendant is a private Christian school that was formed in 1994, and since 1995 has held tax-exempt status with the Internal Revenue Service under Section 501(c)(3). Exhibit A, First Declaration of Benjamin Holland ("Holland Declaration #1") ¶ 3 (previously filed as Docket Entry No. 48-1); Exhibit 1 to Holland Declaration #1, Grant of Providence Academy's status under 501(c)(3). Defendant did not receive funding from the federal government until the extraordinary conditions created by the COVID-19 pandemic and associated lock-down procedures implemented , when it applied for and received loans through the Paycheck Protection Program ("PPP") Holland

1

Declaration #1 ¶ 4-5. Those monies were borrowed from Acclivity Financial, a subsidiary of Citizens Bank, and were used to pay Defendant's teachers and staff from April 17, 2020, through June 30, 2020. *Id.* at ¶ 5-6; Exhibit 2 to Holland Declaration #1, Payroll Summary for Providence Academy. Defendant later sought forgiveness of the PPP loans and interest, which was granted by the Small Business Administration. Holland Declaration #1 ¶ 7-8; Exhibit 3 to Holland Declaration #1, Providence Academy's PPP Loan Forgiveness Application Form 3508EZ; Exhibit 4 to Holland Declaration #1, Notice of Loan Forgiveness from Acclivity Financial and Citizens Bank dated November 6, 2020. That period was the only time in which Defendant received any federal funds. Holland Declaration #1 ¶ 11. Defendant has never otherwise applied for or received federal financial assistance for administration, training, or other benefits of any kind. *Id.*

In 2021 Defendant applied for admission to the Tennessee Secondary School Athletic Association ("TSSAA"). 2nd Am. Compl. ¶ 2; Exhibit C, Second Declaration of Benjamin Holland ("Holland Declaration #2") ¶ 3; Exhibit 1 to Holland Declaration #2, TSSAA Application Materials of Providence Academy. The purpose of the TSSAA is to "stimulate and regulate interscholastic athletic competition among member schools in accordance with the standards established by those schools in the TSSAA Bylaws." Exhibit 2 to Holland Declaration #2, 2023-2024 TSSAA Handbook ("TSSAA Handbook") p. 1.

> Membership in the TSSAA is open to any secondary school in Tennessee, both public and non-public, that meets the following criteria:
>
> 1. Includes grade 9 and/or higher.
> 2. Is approved by the State Department of Education, State Department of Education approved agencies (Schools must be in Category 1, 2, or 3), AdvanceEd, and/or Southern Association of Independent Schools.

Exhibit 1 to the Holland Declaration #2, TSSAA New Member Request Form p.1. Defendant agreed to abide by the Bylaws of the TSSAA and rules contained in the TSSAA Handbook. Holland

Declaration #2 ¶ 6. The rules and Bylaws of the TSSAA govern sanctioned sports, coaching requirements, athlete eligibility, students changing schools, recruiting, specialized camps, and similar competition requirements. TSSAA Handbook, *supra*. The Bylaws and rules of the TSSAA make no mention of Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681 *et seq.* ("Title IX") or its provisions, and contain no language subjecting member schools to the requirements of Title IX. *Id*. None of the Bylaws or rules contained in the TSSAA Handbook dictate how Defendant or other TSSAA-member schools operate their respective schools, so long as their sports teams follow the athletic competition rules set forth in the Bylaws. *Id*.

During the 2023-2024 school year, the minor Plaintiff was a student at Defendant's middle school. 2nd Am. Compl. ¶ 3, 9. As part of enrolling the minor Plaintiff at the school, Lance and Christiana Torbett signed the 2023-2024 Providence Academy Student/Parent Handbook ("Student Handbook"). Exhibit 5 to the Holland Declaration #1 (see Docket Entry No. 26-1); Exhibit B, Plaintiff Lance Torbett's Responses to Request for Admissions ("RFA Responses") #13-14 (see Docket Entry No. 48-8).

On February 11, 2024, the minor Plaintiff attended a Super Bowl party at a private residence (the "Super Bowl party"). *Id*. at ¶ 3; RFA Responses #1. The Super Bowl party was not a school function, it did not take place on school property, and no employee of Providence Academy was in attendance. Holland Declaration #1 ¶ 14. On February 15, 2024, Providence Academy received a report that the minor Plaintiff attended the Super Bowl party, and while there, he and other minors present assaulted another minor child (the "complaining minor") who was also a student at Providence Academy. *Id*. at ¶ 15. Immediately after receiving the report of the alleged assault, Providence Academy notified the Department of Children's Services and local law enforcement about the allegations, as required by law. *Id*. at ¶ 16; Tenn. Code Ann. § 49-6-1601. During Defendant's

3

investigation of the allegations, the minor Plaintiff admitted to actions that constituted assault on the complaining minor. Holland Declaration #1 ¶ 17. Three other minors who attended the private Super Bowl party and who were also students at Providence Academy were also interviewed and found to have been involved in the incident to a lesser degree. *Id.* at ¶ 18. The complaining minor made a report to law enforcement of the incident, and the minor Plaintiff was referred to the Juvenile Court for Washington County, Tennessee, for prosecution on charges of rape. 2nd Am. Compl. ¶ 6; RFA Responses #9. The minor Plaintiff ultimately "made an Alford plea guilty to the amended offense of aggravated reckless assault" and received a sentence of probation. 2nd Am. Compl. ¶ 7; RFA Responses #10-11.

At the conclusion of its investigation, Providence Academy determined to expel the minor Plaintiff. The other minors involved in the assault given suspensions. Holland Declaration #1 ¶ 20. After Defendant made the determination to expel the minor Plaintiff on February 21, 2024, Ben Holland, Head of School at Providence Academy, began composing a letter to Plaintiffs Lance and Christiana Torbett to notify them of the expulsion of the minor Plaintiff. However, on that same date and before he completed the letter, he received an email from Lance Torbett notifying him that Plaintiffs were withdrawing the minor Plaintiff from Providence Academy effective immediately. *Id.* at ¶ 21; Exhibit 6 to Holland Declaration #1, Email exchange between Benjamin Holland and Lance Torbett dated February 21, 2024; RFA Responses ## 20-21. Mr. Holland responded to confirm receipt of their notice of withdrawal of the minor Plaintiff, and included the language he had drafted for the letter to them in which Plaintiffs were instructed that the minor Plaintiff would no longer be permitted on campus or at events sponsored by Providence Academy. *Id.*

Plaintiffs commenced this suit on February 7, 2025, asserting claims under Title IX, and various state law claims, including "negligence, breach of contract, malicious prosecution, and [*sic*]

4

false imprisonment, and outrageous conduct." Complaint ¶¶ 8-9 (Docket Entry No. 1). Defendant filed a Motion to Dismiss all claims pursuant to Fed. R. Civ. P. 12(b)(6) on April 28, 2025. After seeking leave to amend their Complaint, Plaintiffs filed an Amended Complaint on August 5, 2025, which abandoned Plaintiffs' claims for negligence, malicious prosecution, false imprisonment, and outrageous conduct, but continued to assert claims under Title IX and a theory of breach of contract. Amended Complaint ("Am. Compl."), Docket Entry No. 40.

In their Second Amended Complaint, Plaintiffs allege that the "minor Plaintiff had consistently attended Defendant's institution since the minor Plaintiff was enrolled in kindergarten," and that "at the time [of] the minor Plaintiff['s] expulsion during the 2023-2024 academic year, the minor plaintiff was in eighth grade." 2nd Am. Compl. at ¶ 9 (Docket Entry No. 71). Plaintiffs allege that the complaining minor made allegations against the minor plaintiff arising from events that occurred at a Super Bowl party "at a fellow student's home." *Id*. at ¶¶ 3-4. Plaintiffs do not allege that the party was a school-sponsored or school-sanctioned event, nor do they allege that employees of Defendant were present at the party. *Id*., *supra*. Plaintiffs allege "[a]t the instigation of the complaining minor," the minor plaintiff was prosecuted in the Juvenile Court for Washington County, Tennessee, arising from his actions at the private party, and that the minor plaintiff ultimately "plea[ded guilty] to a lesser charge," and that he has "since completed probation." *Id*. at ¶¶ 6-7. Despite the guilty plea of the minor Plaintiff, Plaintiffs insist that the Defendant acted negligently, wrongly, recklessly, or maliciously when it suspended and expelled the minor Plaintiff. *Id.* at ¶ 8.

With respect to Title IX, Plaintiffs allege that "Defendant is an educational institution as defined by Title IX of the Educational Amendments of 1972, 20 U.S.C. Section 1681, *et seq*." Amended Complaint ¶ 2. Plaintiffs further allege that "Defendant accepted monies and other benefits through the Paycheck Protection Program ('PPP') administered by the Small Business Administration

5

and/or other agencies of the federal government." *Id*. at ¶ 2. Plaintiffs also alleged in their Second Amended Complaint that "Defendant applied for and received tax exempt status from the federal government which also constitutes federal financial assistance," and that "Defendant has likewise received federal financial assistance utilizing federal monies and benefits in the administration of and/or attending training and other sessions, grants and other benefits." *Id.* Plaintiffs' Title IX claims are based on an allegation that "Defendant failed to conduct a full and fair inquiry, or provide the minor Plaintiff with a modicum of due process concerning its decision making of the alleged incident [assault by the minor Plaintiff of another minor at a private party]" and that "Defendant failed to investigate any aspect of the complaint against the minor Plaintiff." *Id*. at ¶ 8.

Plaintiffs also asserted a Tennessee state law claim under a theory of breach of contract and attached a copy of the Providence Academy Student/Parent Handbook for the 2023-2024 school year as the contract that Plaintiffs alleged to have been breached by Defendant. *Id*. at ¶ 10. Plaintiffs' Second Amended Complaint alleges that "Defendant's failure to abide by its own policies and procedures and its treatment of the minor Plaintiff constitutes breach of contract to which Defendant is liable." *Id*. However, like the First Amended Complaint before it, the Second Amended Complaint does not identify any provision, policy, or procedure allegedly breached by Defendant. *Id*, *supra*.

## <u>SUMMARY JUDGMENT STANDARD</u>

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When evaluating a motion for summary judgment, the court must consider all facts in the light most favorable to the nonmoving party and the nonmoving party should receive the benefits of every reasonable inference. *Campfield v. Safelite Grp., Inc.*, 91 F.4th 401, 410 (6th Cir. 2024).

6

Applying motions for summary judgment to contracts, "[i]f a contract is in writing and its terms are clear and unambiguous, we ascertain the contract's meaning in accordance with the contract's plainly expressed intent." *Trs. of the Rion Workers Defined Contribution Pension Fund v. Next Century Rebar, LLC*, 115 F.4th 480, 490 (6th Cir. 2024) (quoting *Orrand v. Scassa Asphalt, Inc.*, 794 F.3d 556, 562 (6th Cir. 2015). If the terms of the contract could be reasonably interpreted in two different fashions, then extrinsic evidence is allowed to ascertain the true meaning of the contract. *Rion Workers*, 115 F.4th at 490. However, when the terms of the contract are clear and there is no legal question at stake, summary judgment is proper. *Avantax Wealth Mgmt. v. Marriott Hotel Servs., Inc.*, 108 F.4th 407 (6th Cir. 2024). In *Avantax*, the court evaluated whether a force majeure clause was enforceable when COVID-19 frustrated the purpose of the contract. *Id*. at 415, 416. The Court held that since the contract was unambiguous and COVID-19 restrictions would frustrate the basis of the contract, then the lower court's granting of the motion for summary judgment should be granted. *Id*. at 420.

## LAW AND ARGUMENT

### A. Plaintiff's claims under Title IX fail as a matter of law.

With respect to alleged violations of Title IX, the Second Amended Complaint, like the original Complaint and First Amended Complaint before it, contains only bare legal conclusions. Plaintiffs originally alleged that Defendant is subject to Title IX on three different grounds:

> Defendant is an education institution as defined by Title IX of the Education Amendments of 1972, 20 U.S.C. Section 1681, et seq. Defendant purports to provide educational services to students in grades kindergarten through twelfth grade. . . . Defendant is subject to Title IX by virtue of its acceptance of financial assistance as defined by the act. Plaintiffs aver that Defendant accepted monies and other benefits through the Paycheck Protection Program ("PPP") administered by the Small Business Administration and/or other agencies of the federal government. Plaintiffs also aver that Defendant applied for and received tax exempt status from the federal government

7

which also constitutes federal financial assistance. Plaintiffs further aver upon information and belief that the Defendant likewise received federal financial assistance utilizing federal monies and benefits in the administration of and/or attending training and other sessions, grants and other benefits.

Second Amended Complaint ¶ 2 (emphasis added). After being permitted to amend their complaint yet again, Plaintiffs were permitted to insert the following provision in Paragraph 2 of their Second Amended Complaint, which argument was drawn from the original Complaint filed in *Doe et al. v. Providence Academy et al*, Case No. 2:25-cv-000170-DCLC-crw.

> Plaintiffs avers that Defendant is subject to Title IX by virtue of its actions and/or inactions regarding obtaining membership in the Tennessee Secondary Schools Athletic Association (the "TSSAA"). Plaintiffs aver, upon information and belief, that Defendant voluntarily agreed to comply with Title IX when it applied for membership and/or alternatively, when it was granted membership in the TSSAA. Additionally, Plaintiffs aver that Defendant ceded control of its operations, including but not limited to the control of its athletic department in which the minor Plaintiff was a participant to the TSSAA. The TSSAA is a recipient of federal financial assistance within the meaning of Title IX. By ceding control of all or part of the operations to the TSSAA, including submitting to the rules and regulations by which its athletic department shall operate, Defendant is subject to Title IX for this additional reason.

Second Amended Complaint ¶ 2 (emphasis added).

The Complaint later states: "The Plaintiffs aver the aforementioned conduct violated Title IX of the Educational Amendments of 1972, 20 U.S.C. Section 1681, et seq." *Id*. at ¶ 8.

In order to prevail in their claims under Title IX, Plaintiffs must prove sufficient facts to support a finding that Defendant is subject to Title IX. In order to do so, Plaintiffs must establish facts to show that Defendant was a "recipient" of federal financial assistance within the meaning of 34 C.F.R. § 106.2. *NCAA v. Smith*, 525 U.S. 459 (1999). Specifically, 34 C.F.R. § 106.2 defines "recipient" to include any entity to which "federal financial assistances is extended directly or through another recipient and which operates an education program or activity which receives such assistance, including any subunit, successor, assignee, or transferee thereof." Although Title IX does not define

8

federal financial assistance, Department of Education regulations define "federal financial assistance" for the purposes of Title IX as follows:

> Federal financial assistance means any of the following, when authorized or extended under a law administered by the Department:
>
>> (1) A grant or loan of Federal financial assistance, including funds made available for:
>>
>>> (i) The acquisition, construction, renovation, restoration, or repair of a building or facility or any portion thereof; and
>>>
>>> (ii) Scholarships, loans, grants, wages, or other funds extended to any entity for payment to or on behalf of students admitted to that entity, or extended directly to such students for payment to that entity.
>>
>> (2) A grant of Federal real or personal property or any interest therein, including surplus property, and the proceeds of the sale or transfer of such property, if the Federal share of the fair market value of the property is not, upon such sale or transfer, properly accounted for to the Federal Government.
>>
>> (3) Provision of the services of Federal personnel.
>>
>> (4) Sale or lease of Federal property or any interest therein at nominal consideration, or at consideration reduced for the purpose of assisting the recipient or in recognition of public interest to be served thereby, or permission to use Federal property or any interest therein without consideration.
>>
>> (5) Any other contract, agreement, or arrangement which has as one of its purposes the provision of assistance to any education program or activity, except a contract of insurance or guaranty.

34 C.F.R. § 106.2.

Plaintiffs have raised three theories under which they allege Defendant was a "recipient" of federal financial assistance: (1) receipt and/or forgiveness of PPP loans, (2) receipt of tax-exempt status for federal tax purposes, and (3) "utilizing federal monies and benefits in the administration of and/or attending training and other sessions, grants, and other benefits" 2nd Am. Compl. ¶ 2. They have adopted and asserted two additional arguments that Defendant is subject to Title IX through its membership in TSSAA, either (4) via a voluntary commitment to comply with Title IX in applying for or receiving TSSAA membership, or (5) by ceding control of its athletic department to the

9

TSSAA, which itself receives federal financial assistance within the meaning of Title IX. As argued more fully below, each such theory fails as a matter of law.

1. <u>Defendant's receipt of PPP loans does not subject it to Title IX.</u>

Defendant incorporates by reference the arguments in Section A(1) of its Memorandum of Law in Support of its first Motion for Summary Judgment, Docket Entry No. 50.

2. <u>Defendant's tax-exempt status does not subject it to the provisions of Title IX.</u>

Defendant incorporates by reference the arguments in Section A(2) of its Memorandum of Law in Support of its first Motion for Summary Judgment, Docket Entry No. 50.

3. <u>Plaintiffs have failed to identify any basis for which Defendant would be subject to Title IX.</u>

Defendant incorporates by reference the arguments in Section A(3) of its Memorandum of Law in Support of its first Motion for Summary Judgment, Docket Entry No. 50.

4. <u>Plaintiffs have failed to identify any rule, Bylaw, or term of membership in the TSSAA that would subject Defendant to the requirements of Title IX.</u>

Plaintiffs' specific allegations regarding the TSSAA are that, "upon information and belief, that Defendant voluntarily agreed to comply with Title IX when it applied for membership and/or alternatively, when it was granted membership in the TSSAA." 2nd Am. Compl. ¶ 2. As referenced above, this argument appears to be drawn from the complaint in the parallel case of *Doe v. Providence Academy et al.*, Case No. 2:25-cv-170. However, Plaintiffs in this case have repeated the fatal flaw in the *Doe* case, when they failed state what requirements in the "application process" would subject

10

Providence to Title IX. The Second Amended Complaint cites no such requirements, and doesn't attach any application materials, bylaws, or other documentation that could support such a claim.

After Plaintiffs were permitted to file their Second Amended Complaint, Defendant supplemented its discovery responses with information and records related to its TSSAA membership. (*See* Notice of Service of Discovery Responses, Docket Entry No. 75.) The document production (PA 000794-002194) contained all application materials related to Defendant's Membership in the TSSAA, as well as all communications related to the TSSAA. *See* Exhibits 1 and 2 to the Second Holland Declaration, respectively). As set forth in detail below, none of the application materials, Bylaws, or rules of the TSSAA require any members schools of the TSSAA to comply with the provisions of Title IX.

The TSSAA Constitution, which is included the first five pages of the TSSAA Handbook, identifies the purpose of the TSSAA "to stimulate and regulate interscholastic athletic competition among member schools in accordance with the standards established by those schools in the TSSAA Bylaws." TSSAA Handbook p. 1, Constitution § 2. The Bylaws of the TSSAA are contained in pages 8-35 of the TSSAA Handbook. However, nowhere in the Bylaws or the Constitution of the TSSAA is there any reference to Title IX or its requirements, nor does the TSSAA Handbook mention discrimination. Presumably, this is why Plaintiffs did not attach any TSSAA documentation as an exhibit to their Complaint—it does not support their Title IX claims. But by asserting that Providence's membership in the TSSAA subjected it to the provisions of Title IX, Plaintiffs must cite to some language in some instrument or document in the record that could support that legal theory, and Plaintiffs cannot do so. Accordingly, no factual dispute exists that could support Plaintiffs' Title IX claim under a theory of TSSAA membership, and that claim fails as a matter of law.

11

5. <u>Providence did not cede control of its operations to the TSSAA and thereby subject itself to the requirements of Title IX.</u>

Plaintiffs attempt to create an alternative theory of liability under Title IX and the TSSAA by asserting that:

> Defendant ceded control of its operations, including but not limited to the control of its athletic department in which the minor Plaintiff was a participant to the TSSAA. The TSSAA is a recipient of federal financial assistance within the meaning of Title IX. By ceding control of all or part of the operations to the TSSAA, including submitting to the rules and regulations by which its athletic department shall operate, Defendant is subject to Title IX for this additional reason.

Second Amended Complaint ¶ 2.

Plaintiffs then assert that TSSAA is a recipient of federal financial assistance within the meaning of Title IX, and allege that because the TSSAA is subject to Title IX, Providence must also be subject to Title IX due to the purported "control of its operations" exercised by the TSSAA. *Id.* This final legal theory also fails to state a claim under Title IX upon which relief may be granted.

Title IX governs not only organizations that receive direct federal funds, but also organizations that "control[] and manage[]" direct funding recipients. *Horner v. Kentucky High Sch. Athletic Ass'n.*, 43 F.3d 265, 272 (6th Cir. 1994); *B.P.J. v. W. Va. State Bd. Of Educ.*, 98 F.4th 542 (4th Cir. 2024). Multiple courts have held that where a school that is a recipient of federal funding "cedes controlling authority over a federally funded program to another entity, the controlling entity is covered by Title IX regardless whether it is itself a recipient." *NCAA v. Smith*, 525 U.S. at 469-70. To hold otherwise would allow direct funding recipients to "avoid Title IX liability" by "ced[ing] control over their programs to indirect funding recipients." *Williams v. Bd. of Regents of Univ. Sys. of Ga.*, 477 F.3d 1282, 1294 (11th Cir. 2007); *Barrs v. S. Conf.*, 734 F. Supp. 2d 1229 (N.D. Ala. 2010); *Comtys. for Equity v. Mich. High Sch. Atheltic Ass'n.*, 80 F. Supp. 2d 729 (W.D. Mich. 2000).

The novel legal theory adopted by Plaintiffs is essentially the opposite of Title IX case law, and posits that a private religious institution that does not receive federal funding is nonetheless subject to the restrictions and obligations of Title IX because it allegedly cedes some control to another entity (TSSAA) which also allegedly controls separate organizations that are direct recipients of federal funding. This theory of "reverse ceding of control" runs counter to the structure and logic of Title IX, which seeks to ensure that entities subject to Title IX cannot avoid their obligations by ceding control to entities that would not otherwise be subject to Title IX. It also runs counter to the definition of "recipient" in 34 C.F.R. § 106.2, which covers entities to which "[f]ederal financial assistance is extended directly or through another recipient," but does not mention or apply to entities that pay private funds to third parties that also receive federal funds from third-parties. There is no policy rationale why a school that receives no federal funds should be subject to Title IX because its students play in sports tournaments with other schools that do receive federal funds.

Defendant has been unable to find any authority or case law to support Plaintiffs' novel legal theory of reverse ceding of control. Indeed, as the cases cited above indicate, existing case law involving alleged ceding of controlling authority is made up of cases brought against athletic associations, sports leagues, board of education, or boards of regents, and not against individual private institutions that do not receive federal funds. *See*, *e.g.*, *A.B. v. Haw. State Dep't of Educ.*, 386 F. Supp. 3d 1352 (Haw. 2019); *Alston v. Va. High School League, Inc.*, 144 F. Supp. 2d 526 (W.D. Va. 1999); *Johnny's Icehouse, Inc. v. Amateur Hockey Ass'n*, 134 F. Supp. 2d 965 (N.D. Ill. 2001); *Parker v. Ind. High Sch. Ath. Ass'n*, 2010 U.S. Dist. LEXIS 23409 (S.D. Ind. Mar. 11, 2010); *Kemether v. Penn. Interscholastic Ath. Ass'n*, 1999 U.S. Dist. LEXIS 17331 (E.D. Pa. Nov. 8, 1999). Those associations or boards would necessarily manage federal funds of any organization that received federal funds, but that would not be the case if the participating organization was a private

13

organization that did not receive federal funds. The argument Plaintiffs promulgate would serve to impose all the obligations of Title IX on all private organizations unless they hermetically sealed themselves off from all interactions with other organizations or the rest of their respective communities. This misguided interpretation of Title IX application would essentially prohibit any association by private groups in the public sphere and amounts to an explicit infringement of free speech. *See*, *e.g.*, *Roberts v. U.S. Jaycees*, 468 U.S. 609 (1984); *Adkins v. Bd. of Educ.*, 982 F.2d 952 (6th Cir. 1993); *Boshers v. Maury Co. Bd. of Educ.*, 2025 U.S. Dist. LEXIS 250940 (M.D. Tenn. Oct. 28, 2025).

Regardless of whether there is any supporting case law or authority for Plaintiff's novel legal theory, Plaintiffs cannot show that the operations of a private Christian school or its athletic department are "a federally funded program" as required by Title IX case law. *See  Cmtys. for Equity v. Mich. High Sch. Ath. Ass'n*, 80 F. Supp. 2d 729, 732-33 (W.D. Mich. Jan. 21, 2000). Indeed, the undisputed facts before the Court show that Defendant's athletic program, like the rest of its school operations, was funded entirely by private and non-federal funds during the entire 2023-2024 school year. Holland Declaration #2 ¶ 7.

Moreover, Defendant's membership in the TSSAA and its agreement to abide by TSSAA rules of sports competition do not constitute a "ceding of controlling authority." The stated mission of the TSSAA is "to serve its members by providing leadership and coordination for the administration of interscholastic athletics, which will enhance the educational experiences of students." TSSAA Handbook p. 1. The only control the TSSAA asserts is that of a "general control over all athletic contests in which members schools participate." *Id*. at p. 3. The focus of the TSSAA is over the athletic contests, and not the operations of the members schools themselves. With respect to the actual operations of any member school, the TSSAA does not assert control over those

functions. In fact, the TSSAA Handbook makes clear that it is the principal of the member school—and not the TSSAA—that "shall exercise control over all finances, the scheduling of contests, and all other matters involved in the management of the school's athletic program." *Id*. at p. 10. Similarly, school teams are defined by the TSSAA as those "under the control and conduct <u>of the school</u>." *Id*. at p. 7 (emphasis added). Notably, none of the competition rules promulgated by the TSSAA in its Bylaws or Handbook restrict Defendant's control or operations of its own school or athletic program, so long as Defendant follows the rules of fair competition. The TSSAA does not attempt to control what Defendant teaches, the morals and values Defendant espouses, or the behavior Defendant seeks its students to emulate. TSSAA Handbook, *infra*; Holland Declaration #2 ¶ 8. Accordingly, the undisputed facts establish that Defendant did not cede control of its operations when it joined the TSSAA, and Defendant is entitled to dismissal of Plaintiffs' Title IX claims as a matter of law.

### B. <u>Even if Defendant were subject to Title IX, Plaintiffs have failed to identify any fact that would support a claim for discrimination.</u>

Arguing in the alternative, even if the Court were to conclude that Defendant was subject to Title IX in some way, Plaintiffs have failed to identify any fact or circumstance that could support a claim under Title IX. It is undisputed that the discipline administered by Defendant on minor L.T. was performed solely in response to his assault of another student at a private social event, and not any discriminatory motivation. The minor Plaintiff alleges that "had the Defendant provided basic due process to minor Plaintiff prior to its decision making, the minor Plaintiff would not have been suspended or expelled, much less referred for prosecution." 2nd Am. Compl. ¶ 8. However, Defendant and its employees are mandatory reporters of child abuse and had a legal obligation to report the alleged abuse of a child to law enforcement. Tenn. Code Ann. § 37-1-403(a); *see also*

Holland Declaration #1 ¶ 16. Moreover, as Plaintiffs allege, the prosecution of the minor Plaintiff came "[a]t the instigation of the complaining minor." 2nd Am. Compl. ¶ 6.

Regardless of the specific source of the report to law enforcement, it is undisputed that the minor L.T.'s suspension and expulsion from Defendant's school were both merited and consistent with Defendant's policies, as addressed more fully in Defendant's Memorandum of Law in support of its first Motion for Summary Judgment, Docket Entry No. 50, Section B (pp. 17-21), which is hereby incorporated by reference. Defendant would note that, while the minor L.T. disputed the rape charges brought against him in juvenile court, he nonetheless entered a plea to aggravated reckless assault. 2nd Am. Coml. ¶¶ 8; 6-7; RFA Responses #10. This is consistent with his admissions to Defendant's school administrators after the assault was first reported. "[T]he minor Plaintiff admitted to actions that constituted assault," which was the basis for his suspension and expulsion. Holland Decl. ¶¶ 17, 20. Defendant was well within its right under the terms of its Student Handbook—to which Plaintiffs agreed—that off-campus behavior can lead to disciplinary actions "including disenrollment, suspension, or expulsion." Student Handbook p. 75. "Abuse of other student" and "Any form of physical assault" were specifically enumerated examples of inappropriate conduct that constituted grounds for suspension and/or expulsion. *Id.* at pp. 78-79. Even if the minor Plaintiff had not been later convicted of assault, Defendant acted within its policies when it determined to suspend and later expel the minor Plaintiff, based on his admissions and the report made by the complaining minor. Far from evidencing a deprivation of some constitutional right, the discipline levied by Defendant against the minor Plaintiff was consistent with the undisputed facts of his assault on another child and his eventual plea in juvenile court. There is no factual dispute that could support a claim under Title IX, and even if Defendant was somehow subject to Title IX, such claims fail as a matter of law.

16

**C. <u>Plaintiffs' claims of breach of contract fail as a matter of law.</u>**

To avoid duplication, Defendant incorporates by reference its arguments set forth in Section B of its Memorandum of Law in Support of its first Motion for Summary Judgment, Docket Entry No. 50. Plaintiffs did not respond to this portion of Defendant's previous Motion for Summary Judgment, and may have intended to abandon their breach of contract claims. However, as the Second Amended Complaint contains the same allegations in Paragraph 10 as the prior complaints, Defendant renews its motion for summary judgment as to Plaintiffs' breach of contract claims.

**CONCLUSION**

The minor Plaintiff committed a violent crime against another student during a private party at a private residence. After the complaining minor commenced criminal proceedings, the minor Plaintiff was charged, pleaded guilty to aggravated reckless assault, and was sentenced. Defendant suspended the minor Plaintiff and determined to expel him, but his parents, the adult Plaintiffs in this case, withdrew him from the school before the expulsion could be delivered. The minor Plaintiff has reportedly completed probation, and Plaintiffs could have put this episode behind them and moved on. Instead, Plaintiffs filed this civil lawsuit against the Defendant school for doing its job and reporting the incident to the proper authorities. Plaintiffs' claims fail as a matter of law, they are devoid of factual support, and should not be permitted as a matter of public policy. As such, Defendant prays that the Court dismiss all Plaintiffs' claims with prejudice.

17

Respectfully submitted:

LEWIS THOMASON, P.C.

*/s/ Peter Robison*
Peter C. Robison, BPR #27498
1201 Demonbreun Street, Suite 1000
Nashville, TN 37203
Phone: 615-259-1343
probison@lewisthomason.com

*/s/ Mikel A. Towe*
Mikel A. Towe, BPR #32404
900 South Gay Street, Suite 300
P.O. Box 2425
Knoxville, TN 37902
Phone: 865-546-4646
mtowe@lewisthomason.com

*Counsel for Defendant Providence Academy*

## CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of May, 2026, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

Arthur Knight, III
LAW OFFICE OF ARTHUR KNIGHT, III
3248 Tazewell Pike, Ste 103
Knoxville, TN 37918
arthur@arthurfknightlaw.com

*/s/ Peter Robison*
Peter C. Robison

18