# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
### AT GREENEVILLE

LANCE AND CHRISTIANA TORBETT )
as biological parents and next friends of )
minor Plaintiff L.T., )
                   )
      Plaintiffs, )
                   )
v.                    )        **No. 2:25-cv-00033-DCLC-CRW**
                   )        **JURY DEMANDED**
PROVIDENCE ACADEMY, )
                   )
      Defendant. )

## MEMORANDUM OF FACTS AND LAW IN SUPPORT OF PLAINTIFFS' RESPONSE TO DEFENDANT PROVIDENCE ACADEMY'S SECOND MOTION FOR SUMMARY JUDGMENT

Again, Defendant in this case, as well as the companion case of *Doe v. Providence Academy, Inc. and Benjamin Holland*, Case No. 2:25-cv-170 is filing a dispositive motion in this case utilizing a self-serving Affidavit, and other selective pieces of information purporting to be an all-encompassing description of its relationship with the Tennessee Secondary Schools Athletic Association ("TSSAA") to assert that it does not receive federal financial assistance or subject to Title IX.

Plaintiffs' theory is, and has been, that Defendant's application for and receipt of over $546,000 in federal financial assistance through the Paycheck Protection Program ("PPP") funds, the Defendant's status is tax-exempt organized as a Section 501(c)(3) charitable organization, and its membership in the TSSAA brings the Defendant under the ambit, and procedures of Title IX. Candidly, Plaintiffs contend that any one of these three (3) indisputable facts, subject Defendant to the provisions of Title IX, 20 U.S.C. § 1681, *et seq.*

Defendant contends that the applicability of Title IX depends solely on the period of time it conveniently received federal financial assistance, and that its tax exempt status and membership in the TSSAA cannot subject it to the provisions of Title IX. Plaintiffs, of course, dispute Defendant's assertions and there is no definitive precedent from either the United States Supreme Court, the Sixth Circuit Court of Appeals, or any division within this judicial district which the Court can look to as precedent on the issue of whether Defendant receives federal financial assistance. All that exists, is non-binding cases from other jurisdictions which have considered the issue for other institution and those cases have been previously brought to the attention of the Court by the parties in their respective filings.

For what it's worth, Plaintiff relies on its prior filings, including the citation of any authority in support of its response to Defendant's dispositive motion(s). As stated, the present filing cites to another Affidavit of Benjamin Holland, and selected documents from the TSSAA Defendant deems applicable to its dispositive motion. Yet, and again, it is respectfully submitted that Defendant's dispositive motion be denied.

## FACTS

Predictably, Defendants filing tries to assassinate the character of the minor Plaintiff by its repeated attempt to classify him as engaged in the commission of a violent crime. As stated in the Second Amended Complaint, and in response to at least two (2) Requests to Admit submitted by the Defendant, the minor Plaintiff denied pleading guilty. As indicated to Defendant, the minor Plaintiff did not take a standard guilty plea, rather, the minor Plaintiff made an Alford/best interest plea to the reduced charge of aggravated reckless assault. *See North Carolina v. Alford*, 400 U.S. 25 (1970). The minor Plaintiff was placed on unsupervised probation which he has completed and his file is closed, and has been closed for some time.

2

Under the law, the plea allowed the minor Plaintiff not only to maintain his innocence, but is not always automatically allowed to be used in any subsequent civil litigation arising out of the alleged incident which, of course, has been repeatedly threatened by the complaining minor, and his attorney. Alford pleas are uncommon, and Tennessee law provides that such a plea can only be taken, if both the prosecutor and the Court agree to it. A standard guilty plea would have compelled the minor Plaintiff to recount the facts of the alleged offense under oath and then state he was guilty of whatever offense was charged. This did not happen, as the same is not true.

The complaining minor (who happens to be the plaintiff in the *Doe* case previously referenced in this Memorandum) sought incarceration, and falsely claimed that he had been raped in violation of Tenn. Code Ann. § 39-13-503.

The minor Plaintiff was put in the system of the Juvenile Court for Washington County, Tennessee because of the rancid "talk" of the complaining minor, and through his parents, retained a lawyer, Matthew Bolton of Johnson City, Tennessee. Despite the seriousness of the bare allegation of the complaining minor, the case against the minor Plaintiff was resolved with an Alford/best interest plea to the amended charge of aggravated reckless assault within two (2) months with the sole consequence of unsupervised probation.[1]

Candidly, and respectfully, as in this case, pleas are often based on factors other than guilt or innocence. In this case, the prosecution immediately ceased, and so did the substantial financial burden on the minor Plaintiff's parents. Moreover, the minor Plaintiff was still able to truthfully maintain his innocence, and the "sentence" imposed was certainly more acceptable than the penalties sought. In fact, the minor Plaintiff completed the sentence of unsupervised probation

---

[1] Of course, this was not the only "consequence." The undersigned is referring only to the legal consequence of being charged with rape. The minor Plaintiff was unlawfully expelled from Providence Academy, and barred from its property, and sponsored events.

3

early, and his file has been closed. Yet, in hindsight, in light of the "rumor mill" perpetrated, one wonders if an acquittal would have sufficed for the minor Plaintiff and his family to have avoided all the unwarranted abuse and harassment that they have endured and continue to endure. Of course, if that route was chosen, the minor Plaintiff's family would be out additional and substantial monies.

Surprisingly, on page 15 Defendant claims that Plaintiffs have failed to identify any facts that would support a claim for discrimination under Title IX. The argument is rather perfunctory and encompasses only a page and a half of Defendant's 17-page Memorandum. As the declarations of Plaintiffs demonstrate, the Plaintiffs can and will detail all of Defendant's discriminatory conduct and blatant violation of Title IX if Defendant is deemed subject to its provisions.[2]

Of course, the mechanics of the "so-called investigation" are unknown to Plaintiffs as they have never been disclosed to Plaintiffs nor anyone else connected with Plaintiffs access. Defendant has defended this action solely on its argument that it did not receive federal financial assistance and it is not subject to Title IX, and arguably can violate Title IX at its pleasure. In any event, Plaintiffs contend that the Second Amended Complaint is accurate in that the minor Plaintiff did not receive a modicum of due process until he landed in Juvenile Court.

The incident, as even Defendant will concede, arises out of a Super Bowl Party on February 11, 2024. Supposedly, a teacher overheard the alleged victim, that the minor Plaintiff digitally raped him. In other words, placed his fingers into the victim's anus causing him to bleed. Of course, there has never been any physical evidence supporting this claim. Moreover, the alleged victim has been expelled from Providence Academy, and is currently suing Providence Academy

---

[2] Of course, Defendant cannot help itself in seeking to characterize the resolution of his juvenile case to a standard guilty plea to criminal conduct. As explained, the minor Plaintiff took an Alford/best interest plea and maintained his innocence. He received probation and completed it early.

4

and Ben Holland in Case No. 2:25-cv-170 . The teacher reported what she had overheard to an investigator with the Johnson City Police Department and the minor Plaintiff ended up in Juvenile Court.

The minor Plaintiff did not, and neither did his parents, sit in on any interview of either the alleged victim or anybody else interviewed, if anyone was interviewed, was recorded, or wrote a statement. Plaintiffs have not seen any documentation or tangible things that the minor Plaintiff engaged in any conduct violative of either school policy or the law of any state. The minor Plaintiff was a 14-year-old boy at the time of the incident. Defendant's idea of an investigation is to haul the minor Plaintiff into a room with Mr. Holland, and respond to accusatory questions. His mother's Declaration accurately describes the situation. The minor Plaintiff did not, nor did his mother, totally understand the perverted fantasy playing out in front of them as told by Mr. Holland. After a short colloquy, the minor Plaintiff was excused and suspended indefinitely. Mr. Holland treated the minor Plaintiff and his mother disparagingly, and at no time has the minor Plaintiff or either of his parents been allowed to attend any part of Mr. Holland's "so-called investigation", or provided with any type of memorialized statement or any other tangible item which was a part of Mr. Holland's "so-called investigation." That, of course, includes any representation that Mr. Holland, or anyone else represented to members of the Board, or anyone else at Providence Academy concerning the incident.

The only thing that was learned was that Mr. Holland told the minor Plaintiff's father in the morning during a telephone call, that the matter had been turned over to the City of Johnson City Police Department. Thus, it does not appear that Providence Academy, or Mr. Holland, conducted any "investigation" into the matter. The next communication that the minor Plaintiff or his parents received from Mr. Holland or anyone else with Providence Academy was the February 21, 2024, email from Mr. Holland and the Board informing the minor Plaintiff's parents that the

5

minor Plaintiff had been expelled effective immediately, and was banned from the campus of Providence Academy and any sponsored event. Interestingly enough, the juvenile petition was not filed against Plaintiff until February 24, 2024. Defendant has not produced, even as a sealed document or under the Protective Order entered in this case July 2, 2025, what, if anything, Mr. Holland or any member of the Board did to look into, much less "investigate" this matter.

With respect, a couple of questions of the minor Plaintiff, an immediate and indefinite suspension, an immediate expulsion some days later and the statement that it would be looked into by the City of Johnson City Police Department, it is not only incompatible with Title IX and its extensive regulations concerning the type of inquiry which should be conducted, but constitutes no process at all. An accusation was made, it was denied, no facts other than overhearing a comment in a classroom support the accusation, the indefinite suspension pending the outcome of an "investigation" that apparently is not undertaken by the Defendant, the expulsion three (3) days before a juvenile petition was filed. This is nothing but a blanket violation of Title IX, or any concept of fairness. Defendant has provided no facts of what, if any procedure occurred, much less what, if any procedural safeguards occurred.

The only thing Defendant has done on page 16 of its Memorandum is cite its Handbook and deem Plaintiff guilty of an assault. Of course, it is submitted that the "assault" argument is nothing but an afterthought by counsel for Defendant as the minor Plaintiff did not enter an Alford/best interest plea to the amended charge of reckless aggravated assault until April 24, 2024. One would think, that had Providence Academy done any "investigation" or "investigating" which came remotely close to providing rudimentary due process, it would have been disclosed. It hasn't. Thus, the argument in Section B of Defendant's Memorandum in Support of its Second Motion for Summary Judgment should respectfully be denied.

6

**CAUSE OF ACTION**

With respect, Defendant's Memorandum appears to the onlooker to have the weight of legal support compared to Plaintiffs' due to Defendant's Memorandum citation of multiple cases. Yet, although no doubt faithfully submitted by Defendant in support of Defendant's position, the cases cited generally serve as Red Herrings to the issues at the heart of this case: Is Providence Academy subject to Title IX? If there was any law in direct support of Defendant's position, the undersigned is confident that Defendant would not only have cited it, but would have highlighted any language debunking Plaintiffs' contention, and assume, the validity of the arguments being posited by the attorneys prosecuting the *Doe v. Providence Academy, Inc. and Benjamin Holland,* Case No.: 2:25-cv-170, a claim which is also pending before this Court. Essentially, the resolution of the issue presented involves a policy debate considering Providence Academy's status, and the facts applicable to it. No doubt, one of these cases will end up being considered by a panel of this Circuit or higher. Then, perhaps the district courts of this Circuit, practicing attorneys, parents, students, schools, educational institutions, etc. will have guidance as to what constitutes "federal financial assistance" in this area, and what actions must be taken to separate, as Providence contends it is, any desiring institution from federal regulation.

It is respectfully submitted that Defendant has not separated itself sufficiently to avoid the applicable of federal law. In fact, the undisputed facts show that Providence Academy is heavily intertwined with direct recipients of federal financial assistance from the federal government.[3]

Plaintiffs have already discussed Defendant's admitted tax exempt status it has enjoyed since the inception of the school. That the federal government allows the Defendant to characterize

---

[3] This, of course, assumes without a forensic examination of Defendant's finances that Defendant is not a direct recipient of federal financial assistance.

itself as a charitable organization pursuant to the Internal Revenue Code without the obligation to pay taxes, which allows monies obtained by the Defendant to be freed up for the Defendant to spend however it wants on its various programs. More than that, however, other persons and/or entities can reduce their or its taxable income by donating sums of money to the Defendant. That is why, as explained in Plaintiffs' other filings, that certain courts have strongly considered that the same constitutes federal financial assistance within the meaning of Title IX, as it obviously is, federal aid.

Also, Plaintiffs have pointed out Defendant was more than willing to accept thousands of dollars in aid from the federal government under the PPP program managed by the Small Business Association. Of course, Defendant makes much of the fact that payments directly to the Defendant lasted only for a period of time, and the situation involving Plaintiff did not occur during that specific period of time, although the minor Plaintiff was enrolled and paying tuition at Providence Academy. So, as Defendant reasons, it was subject to Title IX only for the period of time it directly accepted federal government money, and at no other time. Paraphrasing, Defendant goes on to characterize the program as the government's response to an unforeseeable event, and Defendant should not be bound by its conscious decision to participate fully in the program, except, one assumes, while directly receiving monies. Of course, this argument is speculative, and attempts to confine Title IX to the periods of time where someone, such as Plaintiff, can clearly point out that Defendant, and others of the like, received money from the federal government.

In previous filings, Plaintiff cited cases finding otherwise, or at least demonstrating how courts struggle with this issue. Yet, even if the issue had never arisen, institutions like Defendant should be deemed subject to Title IX. The main fact that Defendant willingly and consciously chose to accept substantial funds directly from the federal government demonstrates that it is so intertwined or linked sufficiently to subject Defendant to the basic fairness rules Title IX provides

8

in its legislation. If Defendant does not want to be "saddled" with any regulation it deems unsavory or burdensome from the federal government, the simple solution is to isolate itself and do not accept financial assistance from the federal government. Candidly, if a like situation occurred again, and assistance was available, no doubt exists that Defendant would again jump at the chance to fund its institution with federal aid. As previously argued, Defendant's desire to "have its cake and eat it too" relationship with the Federal government is untenable. Defendant and institutions of the like will always accept federal government aid, or any status the federal government may provide, in order to financially flourish. Yet, the moment that compliance with certain federal laws is tied to Defendant's blatant acceptance of help, Defendant screams that it is an institution operating separately from the federal government which simply is not true. Simply put, the above idiom simply means that Providence Academy desires to enjoy the benefits of two mutually exclusive or incompatible things at the same time. Providence, and institutions of the like, must decide between the two (2) as you cannot have it both.[4]

---

[4] Defendant has strenuously argued in previous filings that it is subject to Title IX only when it is actively receiving federal funds directly from the federal government. The argument goes that Defendant should not be indefinitely subject to Title IX or any other federal law requiring federal financial assistance despite the fact that it received direct federal funding during a certain period of time. Plaintiff, of course, contends that Defendant is subject to Title IX and any other law requiring federal financial assistance for accepting PPP funds, as well as its tax exempt status and membership in the TSSAA. Yet, as a compromise position only, and to avoid Defendant's argument concerning being indefinitely subject to Title IX when it only received funds for a couple of months (no matter the amount), Plaintiff would argue that Defendant clearly is subject to Title IX at the time of this incident, as even Defendant would concede it was subject to Title IX during the period of time it collected federal money. Accordingly, if the minor Plaintiff was enrolled at the time Defendant was receiving federal money and therefore a direct recipient of federal financial assistance necessary for the application of Title IX, then the minor Plaintiff should be entitled to Title IX protections or, in other words, Defendant should be subject to Title IX as long as the minor Plaintiff is enrolled in its institution. The minor Plaintiff was clearly enrolled in elementary school at Providence Academy when Providence Academy was actively taking federal money under the PPP program. He was subject to the protections of Title IX at that time and he should be at the time of this incident which resulted in his expulsion and banishment from Providence Academy property.

9

Defendant's Second Motion for Summary Judgment, however, primarily addresses another reality Defendant desires and has to concede, and that is it is knee-deep in relationships with other entities that are direct financial recipients from the federal government thanks to its membership and devotion to the TSSAA. Defendant's Memorandum seriously downplays the role of the TSSAA in athletic competition of all its member schools, of which Defendant has been a member since February 8, 2022. Even Holland's self-serving Affidavit attached as Exhibit C to the Second Motion for Summary Judgment admits, as it must, that Providence Academy ensures that its school teams and coaches, and presumably players, abide by the Bylaws of the TSSAA and the rules contained in the 65-page TSBA Handbook.[5] Everyone knows that the TSSAA is a state-wide organization regulating just about every aspect of athletic competition-both boys and girls, in the state of Tennessee. Through its organization, as outlined in the Handbook submitted by Defendant in its filing, and candidly the TSSAA's own website, the organization attempts to address all topics related to the athletic competitions engaged in all sports by its members. The TSSAA Manual goes into such detail not only providing its Constitution and its Bylaws as well as its overview of how it administers each athletic program, the Manual even addresses what the TSSAA expects officials to be paid in certain sports in the Appendix.

Accordingly, there is no doubt that the TSSAA's desire to saturate all participating institutions with its regulation of all male and female sports which its member institutions desire to compete. Plaintiff therefore finds it quite difficult to understand why Defendant "ridicules" Plaintiffs for asserting that Defendant has "has ceded control" of its athletic program to the TSSAA. The terms of the TSSAA's rules as stated in the Handbook that Defendant willingly follows demand the compliance of Providence Academy with the multiple rules, guidelines, and

---

[5] The 65-page Handbook is attached to the Holland Affidavit as Exhibit C-2.

objectives of the TSSAA. Otherwise, Defendant is not involved in organized competition. Defendant's athletic department does not regulate or even seek to regulate the competition of all sports, again both male and female, the TSSAA does. Otherwise, Defendant does not have to be a member of the TSSAA, in fact, to isolate itself as it obviously desires, Defendant does not even have to have an athletic program. Defendant's own website, which whether they want to admit it or not, Defendant's officials, including Holland, have had to read supports and is totally transparent on the goal of TSSAA, and the reasons why it exists, and has existed for almost 100 years.

In its website, in the section "About TSSAA", conveniently found at TSSAA.org, this section reads in pertinent part:

> The Tennessee Secondary School Athletic Association (TSSAA) is a registered 501(c)(3) non-profit organization committed to enhancing the educational experiences of students state-wide through its leadership and regulation of interscholastic athletics. TSSAA prioritizes the holistic development of students by collaborating with schools to integrate athletics into the educational framework, emphasizing values such as teamwork, sportsmanship, discipline, and integrity.

*****

> TSSAA's mission is rooted in benefitting the broader community to providing equitable opportunities for student-athletes and fostering personal growth through participation in organized sports. These programs not only complement classroom education but also instill lifelong skills that prepare students to become positive contributors to society.

> The organization reinvests its resources into initiatives that enrich the lives of students, promote physical and mental well-being, and encourage civic engagement. Through its work, TSSAA supports the development of good citizens, builds a strong foundation for community leadership, and fosters values that strengthen the fabric of civil society. By integrating these principles into its operations and mission, TSSAA contributes meaningfully to education and community improvement statewide.

11

tssaa.org\about-tssaa.[6]

Also, according to TSSAA's own website, 60%[7] of the TSSAA's annual financial support comes from gate receipts of post-season tournaments organized by TSSAA. Only three percent (3%) of support comes from dues or fines paid by member schools. *See* tssaa.org\about-tssaa-finances.[8] Again, membership in the TSSAA is totally voluntary. Members, such as Providence Academy, do not have to be members, and if it wishes, does not have to have an athletic program of any type.

Now, how does being a member of the TSSAA subject Defendant to Title IX. Plaintiffs have already mentioned in this Memorandum that the TSSAA, like Providence Academy, is a direct financial recipient from the federal government as a result of its 501(c)(3) tax exempt status, but also that it receives substantial funds from the PPP program administered by the federal agency, Small Business Association.

Defendant is correct. In order to prevail, Plaintiffs must prove sufficient facts supporting a finding that Defendant is subject to Title IX. That simply means that Plaintiffs must submit sufficient facts supporting a finding that Defendant was a "recipient" of federal financial assistance within the meaning of 34 C.F.R. § 102.2. *NCAA v. Smith*, 525 U.S. 459 (1999). The regulations cited, both here and in Defendant's brief at page 8, defines "recipient" to include any entity which

---

[6] Like Providence Academy, the TSSAA is a 501(c)(3) non-profit organization recognized by the IRS. *See* tssaa.org\about-tssaa-finances, and received substantial monies from the federal government under the PPP program.

[7] Not only does the TSSAA receive monies from gate receipts, membership schools retain a large portion of gate receipts at the district, regional, sectional, or state level. As an example, the TSSAA estimates that precipitating teams split 50% of the gate receipts in football, and between 60-80% of receipts in other sports. *See* tssaa.org\about-tssaa-finances.

[8] Unless successfully contradicted or proven to have another meaning, one has to assume that the word "fines" in the TSSAA website contemplates its utilization in its plain meaning. Fines are financial penalties referring to money that must be paid as punishment for breaking a law or rule. Thus, if a member happens to break a rule it agreed to abide by by its membership in TSSAA, the TSSAA may issue a financial penalty to the member for breaking a TSSAA rule.

12

"federal financial assistances is extended directly or through another recipient and which operates an educational program or activity which receives such assistance, including any subunit, successor, assignee, or transferee thereof" [*emphasis added*] directly or through another recipient. Defendant is also correct that 34 C.F.R. § 106.2 defines "federal financial assistance" for purposes of Title IX as follows:

> Federal financial assistance means any of the following, when authorized or extended under a law administered by the Department:
>
> (1) A grant or loan of Federal Financial assistance, including funds made available for:
>
>> (i)    The acquisition, construction, renovation, restoration, ore repair of a building or any portion thereof; and
>>
>> (ii)    Scholarships, loans, grants, wages, or other funds extended to any entity for payment to or on behalf of students admitted to that entity, or extended directly to such students for payment to that entity.
>
> (2) A grant of Federal real or personal property or any interest therein, including surplus property, and the proceeds of the sale or transfer of such property, if the Federal share of the fair market value of the property is not, upon such sale or transfer, properly accounted for to the Federal Government.
>
> (3) Provision of the services of Federal personnel.
>
> (4) Sale or lease of Federal property or any interest therein at nominal consideration, or t consideration reduced for the purpose of assisting the recipient or in recognition of public interest to be served thereby, or permission to use Federal property or any interest therein without consideration.
>
> (5) Any other contract, agreement, or arrangement which has as one of its purposes the provision of assistance to any education program or activity, except a contract of insurance or guaranty.

34 C.F.R. § 106.2

Well, how does the TSSAA make or contribute to making Providence Academy a recipient of federal financial assistance subjecting it to the regulations of Title IX. No dispute exists that the TSSAA is composed of multiple institutions that are direct recipients of federal money.[9] That probably applies to all public schools or public school districts in Tennessee. It probably also applies to a large percentage of secular private schools although the undersigned cannot locate precise percentages in this regard. Yet, again, looking at the TSSAA's own website, it clearly sets forth that nearly 30% of all TSSAA's annual support is spent on insurance coverage on students, coaches, and TSSAA staff of all member schools [*emphasis added*] tssaa.org\about-tssaa-finances. Between 30-40% of expenditures annually go toward services for schools and officials, conducting tournaments, awards, and educational programs for all member schools [*emphasis added*]. This also includes legal fees and general operating expenses. *Id.* Of course, there is no mention of schools who do not receive monies for such services as outlined on the TSSAA website. You merely have to be a member, like Providence Academy. Nothing, in the Holland Affidavit, disputes this characterization.

As I already stated, the TSSAA has members of both public and private schools, secular and non-secular. Thus, the member schools are in a relationship with each other and depending on certain factors, play each other in both regular season and playoff games assuming they are at an equal or substantially equal level of competition. Accordingly, as argued on page 12 of Defendant's brief, Defendant clearly "controls, manages, and manages direct funding recipients" citing *Horner v. Kentucky High Sch. Athletic Ass'n*, 43 F.3d 265, 272 (6th Cir. 1994); *B.P.J. v. W. Va. State Bd. of Educ.*, 98 F.4 542 (4th Cir. 2024). While it is true, that nothing in the expansive

---

[9] Multiple studies indicate that at least 18.5% of the budgets from all public schools come directly from the Federal government. usafacts.org/answers/how-are-public-schools-in-the-us-funded/state/Tennessee.

14

coverage and rules of the TSSAA specifically mention Title IX compliance, it cannot be said based upon the TSSAA's own disclosures about what is done with monies received, does not subject all member schools to Title IX.

## CONCLUSION

For each and all of the foregoing reasons, it is respectfully submitted that Defendant's Second Motion for Summary Judgment be denied, any previous dispositive motion, if applicable, be denied and this matter proceed to trial.

Respectfully submitted this 12th day of June, 2026.

LAW OFFICE OF ARTHUR F. KNIGHT, III

*s/Arthur F. Knight, III*
Arthur F. Knight, III, BPR #016178
Law Office of Arthur F. Knight, III
3248 Tazewell Pike, Suite 103
Knoxville, TN 37918
P: (865) 252-0430
Email: art@artknightlaw.com
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on June 12, 2026, a copy of the foregoing Memorandum of Facts and Law in Support of Plaintiffs' Response to Defendant Providence Academy's Second Motion for Summary Judgment was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's electronic filing system.

*/s/ Arthur F. Knight, III*
Arthur F. Knight, III

15